1

2                                                    **E-Filed 7/7/2011**

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                           SAN JOSE DIVISION

9

10   JONATHAN KNOTTS,                     Case Number 05:09-cv-4851 JF

11                    Plaintiff,          ORDER[1] GRANTING MOTION FOR
                                          SUMMARY JUDGMENT
12          v.

13   RAY CARREIRA, a Santa Clara Police Officer;
     STEVEN ERNST, a Santa Clara Police Officer;
14   JOHN DOE AND RICHARD ROE, Santa Clara
     Police Officers, the identities and exact number of
15   whom unknown to Plaintiff at this time; CITY OF
     SANTA CLARA; DOES 1 through 25,
16
                     Defendants.
17

18          Plaintiff Jonathan Knotts brings this action against Defendants Ray Carreira, Steven

19   Ernst, and the City of Santa Clara, alleging violation of his Fourth Amendment rights and related

20   state law claims.  Defendants move for summary judgment on the basis that Officers Carreira

21   and Ernst are entitled to qualified immunity from suit.  The Court concludes that although Knotts

22   may have been "an innocent citizen at the wrong place at the wrong time," Pl.'s Op. at 15, a

23   reasonable officer in the position of Officers Carreira and Ernst could have believed that the

24   search of Knotts's vehicle and Knotts's subsequent arrest were supported by probable cause, and

25   accordingly that the officers' legal position is correct.

26

27   _____

28          [1] This disposition is not designated for publication in the official reports.

1

**I. BACKGROUND**

2   The material facts essentially are undisputed.  On the afternoon of August 7, 2008, the

3   Santa Clara Police Department (SCPD) received a report from an individual named Charles

4   Sisson, who claimed that a threat had been made against him.  Statement of Undisputed Facts

5   (SUF) ¶ 1.  Officers Carreira and Ernst were dispatched to Sisson's workplace at 1525 Walsh

6   Avenue.  Sisson told the officers that his brother-in-law, Chris Dangerfield, had threatened him

7   with serious bodily injury, telling him that "[w]hen I'm done with you I'm gonna make sure that

8   you breathe through a straw."  *Id.* ¶ 2.  Sisson told the officers that Dangerfield was known to

9   carry a wrench or pipe with him and allegedly had "muscle" from a motorcycle gang called the

10  Regulators at his disposal.  *Id.* ¶ 3; Carreira Dep. 68:2-14.  Carreira and Ernst commenced

11  surveillance of 1525 Walsh Avenue at approximately 3:00 p.m.

12  About thirty minutes later, Knotts, an unemployed machinist, drove his Jeep Cherokee

13  down Walsh Avenue in search of a business called Danny's Recycling, intending to recycle three

14  computer monitors.  Knotts Dep. 12:14-13:6, 26:11-25.  Danny's Recycling is located at 1745

15  Walsh Avenue, but Knotts had transposed the number to "1475" when writing the address on his

16  notepad.  Knotts Dep. 28:4-10; Carreira Dep. 114:13-19.  The officers watched Knotts's vehicle

17  approach 1525 Walsh Avenue, drive slowly past, turn around, and then drive slowly past again.

18  SUF ¶ 5.  The officers decided to stop Knotts on suspicion that he was Dangerfield's agent and

19  was planning to carry out the threats made against Sisson.  SUF ¶ 7.

20  Using a loudspeaker, the officers ordered Knotts to throw his keys out the window, show

21  his hands, and step out of the vehicle.  SUF ¶ 8.  After Knotts complied, the officers approached

22  with their guns drawn.  Knotts Dep. 49:13-18; Ernst Dep. 60:2-3.  Knotts then was frisked and

23  handcuffed.  SUF ¶ 9.  The officers ran Knotts's identification through their database and

24  determined that Knotts had no criminal record or warrants.  *Id.* ¶ 13.  They brought Sisson

25  outside to see if he recognized Knotts, which he did not.  *Id.*  Knotts denied knowing Dangerfield

26  or having any involvement in drug use or motorcycle gangs.  *Id.* ¶ 11.

27  Knotts was questioned about where he worked and why he had monitors in his car.

28  Officer Carreira, who previously had worked undercover in a criminal investigation involving e-

2

1   waste recycling, was suspicious of Knotts's explanation that he was looking for the recycling

2   center.  Carreira Dep. 108:14-109:3, 110:12-111:11.  Carreira knew that Danny's Recycling was

3   nearby and marked with large signs; and he believed that it was common knowledge that

4   recycling centers are not open after 3:00 p.m. *Id.* 39:4-13, 44:18-25, 108:14-112:23, 120:7-24.

5        Based on his suspicion, Carreira asked for Knotts's permission to search the vehicle.

6   Knotts said that officers could "go ahead."[2]  During the search, officers found a metal manifold

7   in the back seat.  The manifold bore distinct similarities to a P-24 police baton, commonly

8   known as a "billy club."  SUF ¶ 17.  A billy club is an illegal weapon pursuant to California

9   Penal Code § 12020.  Knotts told the officers that the manifold was not a weapon but rather was

10  an example of his work as a machinist that he intended to show to potential employers.  Carreira

11  Dep. 12:18-21, 116:25-117:6.

12       Knotts was arrested for possession of an illegal weapon and was transported to the Santa

13  Clara County Main Jail, where he was held overnight.  SUF ¶¶ 18-19.  In January 2009, the state

14  court dismissed the criminal case and entered a finding of factual innocence.  Knotts Dep. 73:5-

15  8.

16                                **II. LEGAL STANDARD**

17       A motion for summary judgment should be granted if there is no genuine issue of

18  material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

19  56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those

20  that might affect the outcome of the case under the governing law.  *Id.* at 248.  There is a genuine

21  dispute about a material fact if there is sufficient evidence for a reasonable jury to return a

22  verdict for the nonmoving party.  *Id.*  The moving party bears the initial burden of informing the

23  Court of the basis for the motion and identifying portions of the pleadings, depositions,

24  admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex*

25  *Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Where the party moving for summary judgment

26  would not bear the ultimate burden of persuasion at trial, it must either produce evidence

27

28        [2]  See discussion on p. 5, below.

                                      3

1  negating an essential element of the nonmoving party's claim or defense or show that the

2  nonmoving party does not have enough evidence of an essential element to carry its ultimate

3  burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102

4  (9th Cir. 2000). If the moving party meets its initial burden, the burden shifts to the nonmoving

5  party to present specific facts showing that there is a genuine issue of material fact for trial. Fed.

6  R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324.

7      The evidence and all reasonable inferences must be viewed in the light most favorable to

8  the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-

9  31 (9th Cir. 1987). Summary judgment thus is not appropriate if the nonmoving party presents

10  evidence from which a reasonable jury could resolve the material issue in its favor. *Liberty*

11  *Lobby,* 477 U.S. at 248-49; *Barlow v. Ground,* 943 F.2d 1132, 1134-36 (9th Cir. 1991).

### III. DISCUSSION

12  

13  **A.**    **Section 1983 Claims**

14      **1.**    **Qualified immunity**

15      The doctrine of qualified immunity protects government officials "from liability for civil

16  damages insofar as their conduct does not violate clearly established statutory or constitutional

17  rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223

18  (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has held

19  that qualified immunity "is an immunity from suit rather than a mere defense to liability," *id.*

20  (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)), and has stressed "the importance of

21  resolving immunity questions at the earliest possible stage in litigation," *id.* (quoting *Hunter v.*

22  *Bryant*, 502 U.S. 224 (1991)). Accordingly, "qualified immunity is particularly amenable" to

23  adjudication by summary judgment. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir.

24  2004).

25      "The qualified immunity inquiry asks two questions: (1) was there a violation of a

26  constitutional right, and, if so, then (2) was the right at issue 'clearly established' such that it

27  would have been clear to a reasonable officer that his conduct was unlawful in that situation?"

28  *Brooks v. City of Seattle*, 599 F.3d 1018, 1022 (9th Cir. 2010). Courts have "discretion to grant

4

1    qualified immunity on the basis of the 'clearly established' prong, alone, without deciding in the

2    first instance whether any right had been violated." *James v. Rowland,* 606 F.3d 646, 651 (9th

3    Cir. 2010) (citing *Pearson*, 55 U.S. at 223). "To be clearly established, the law must be

4    sufficiently clear that a reasonable official would understand that his or her action violates that

5    right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If officers' "actions reflected a

6    reasonable mistake about what the law requires, they are entitled to qualified immunity."

7    *Brooks*, 599 F.3d at 1022.

8         **2.**      **Constitutionality of the search of Knotts's vehicle**

9       Knotts does not contest the validity of the initial stop.  However, he contends that his

10   Fourth Amendment rights were violated by the search of his automobile and his subsequent

11   arrest based on the evidence found in that search.[3]  Defendants contend that Knotts voluntarily

12   consented to the search of his vehicle, and that even if the consent was invalid, there was

13   probable cause for the search.

14       If a driver voluntarily consents to a search of his vehicle, police officers may conduct a

15   search without probable cause or a warrant. *See Ohio v. Robinette*, 519 U.S. 33 (1996);

16   *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).  However, "[t]he Fourth Amendment requires

17   that a consent not be coerced, by explicit or implicit means, by implied threat or covert force."

18   *Liberal v. Estarada*, 632 F.3d 1064, 1082 (9th Cir. 2011) (quoting *Schenckloth*, 412 U.S. 228)

19   (alterations in original omitted).  Defendants contend that Knotts's consent necessarily was

20   voluntary based on Knotts's admission that the consent was motivated by his desire to exonerate

21   himself and not because of any coercion by the officers.  In a declaration in support of his motion

22   for a finding of factual innocence, Knotts stated that he consented because he "had done nothing

23   illegal and had nothing to hide."  Pl.'s Written Statement 5.  However, in his deposition in this

24   case, Knotts testified that he felt he "had no choice" but to consent to the search.  Knotts Dep.

25   57:7-10.  Knotts points out that at the time of his consent the officers had drawn their weapons,

26

27

28        [3]  Knotts initially claimed violations of his Fifth and Eighth Amendment rights as well.
   However, he has conceded and withdrawn those claims.  Pl.'s Op. at 9 fn.10.

Case No. C 07-04987 JF
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC3)

had placed him in handcuffs, and had not given *Miranda*[4] warnings.  *See Liberal v. Estarada*, 632 F.3d 1064, 1082 (9th Cir. 2011) (listing factors relevant to validity of consent).  Because the instant motion can be determined without resolving the apparent inconsistency between Knotts's two statements, the Court will assume without deciding that there is a triable issue of fact as to the voluntariness of Knotts's consent.

However, even if a consent is invalid, a search may be justified by probable cause.  A nonconsensual search of a vehicle "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained."  *United States v. Ross*, 456 U.S. 798 (1982).  "Probable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime."  *United States v. Noster*, 590 F.3d 624, 629-30 (9th Cir. 2009).

The officers identify several facts that led them to believe that they had probable cause to search Knotts's vehicle: Knotts repeatedly drove slowly by the victim's location; Knotts was a white male with facial hair, who partially matched the general description provided by Sisson;[5] Knotts had a strong build and thus plausibly could have been Dangerfield's "muscle"; several computer monitors were visible in the vehicle, and Carreira believed on the basis of his experience and training that such monitors sometimes "are recycled for internal copper most often by the criminal element"; Knotts told the officers that he was looking for Danny's Recycling, which in Carreira's experience is "primarily frequented by criminal 'customers'"; Knotts claimed that he was unable to find Danny's Recycling even though it was nearby and had four large signs in front; and Knotts was unemployed.  Def.'s Reply at 2.  The officers also testified that they saw binoculars in the vehicle that could have been "tools of the trade" for a criminal conducting surveillance on a target, Carreira Dep. 107:5-20, and that they doubted Knotts's explanation that he used the binoculars for bird-watching with his daughter.  *Id.* 124:9-

---

[4]  *Miranda v. Arizona*, 384 U.S. 436 (1966).

[5]  Defendants acknowledge that Knotts did not meet Sisson's description of Dangerfield and did not look like a "biker" or methamphetamine user.  Carreira Dep. 38:12-:39-10.

1  12. It is not clear from the record whether the binoculars were in plain view prior to the search

2  or found during the search. *See* SUF ¶ 15; Knotts Dep. 63:12-15.

3      "Although police may rely on the totality of facts available to them in establishing

4  probable cause, they also may not disregard facts tending to dissipate probable cause." *Crowe*

5  *v. County of San Diego*, 608 F.3d 406, 433 (9th Cir. 2010) (quoting *United States v.*

6  *Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005)). Knotts contends that his polite demeanor,

7  his lack of a criminal history, the fact that he was not identified by Sisson and stated that he did

8  not know Dangerfield or a motorcycle gang called the Regulators, and the fact that he provided a

9  reasonable explanation of his activities all were consistent with innocent conduct but were

10  ignored by Defendants. Defendants argue that politeness, denial of knowledge of the suspected

11  crime, and plausible explanations for suspicious activities cannot simply be taken at face value in

12  a criminal investigation. They also point out that while Sisson did not recognize Knotts, they

13  had been informed that Dangerfield may have sent "muscle" unknown to Sisson to carry out the

14  threat. While Knotts questions the reasonableness of Carreira's belief that Knotts's interest in

15  recycling was suspicious, Carreira was entitled to draw upon his experience and training as a

16  police officer, including his familiarity with criminal activity associated with recycling centers.

17  *Cf. United States v. Arvizu*, 534 U.S. 266, 273 (2002).

18      The Court in its discretion will adjudicate this case based on the "clearly established"

19  prong of the qualified immunity analysis. *See Pearson*, 55 U.S. at 223. Without determining

20  whether the officers in fact had probable cause to conduct the search, the Court concludes that

21  reasonable officers in the position of Officers Carreira and Ernst could have believed that the

22  search did not violate Knotts's Fourth Amendment rights. The Supreme Court has held that in

23  order to clearly established, "the contours of the right must be sufficiently clear that a reasonable

24  official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483

25  U.S. 635, 640 (1987). "It is inevitable that law enforcement officials will in some cases

26  reasonably but mistakenly conclude that probable cause is present." *Id.* at 641. In as similar

27  vein, the Ninth Circuit has stated that officers are immune from suit "when they reasonably

28  believe that probable cause existed, even though it is subsequently concluded that it did not,

7

because the officers 'cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves.'" *Crow*, 608 F.3d at 433 (quoting *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981)).

Here, the officers found Knotts driving in a suspicious manner near Sisson's workplace shortly after they were informed someone might be coming to carry out a threat. Knotts was a large, white male with a strong build who identified himself as unemployed, facts not inconsistent with the profile of the "muscle" that could have been sent by Dangerfield. In addition, the officers had at least some reason to question Knotts's explanation that he was searching for the nearby and clearly marked recycling center, and Carreira, who had experience investigating illegal activities associated with e-waste recycling, was not unreasonable in concluded that Knotts's statement raised additional concerns.

In hindsight, and as the determination of factual innocence suggests, it is apparent that Knotts was the victim of a bizarre series of coincidences–from his decision to drive to the recycling center minutes after the officers were called to investigate the threat, to his transposition of the address on the recycling center, to the subsequent discovery in his vehicle of a manifold that happened to bear a remarkable resemblance to a billy club. However, while these events may be easily untangled in the calm of a courtroom many months after the fact, the doctrine of qualified immunity is meant to protect the reasonable conduct of officers who must make judgment calls based on the facts as they see them in the field. Given what was apparent to them at the time, Officers Carreira and Ernst reasonably could have believed that they had probable cause to search Knotts's vehicle.[6]

### 3.   The constitutionality of Knotts's arrest

Knotts also contends that even if the search was valid, the officers lacked probable cause to arrest him because they did not conduct an adequate investigation. Knotts points to cases in which a single fact that could be consistent with either innocent or criminal activity was

---

[6]  Quoting a Seventh Circuit case, Knotts aptly observes that: "Probable cause may be loose concept, but it leaves no room for the absurd." Pl.'s Op. 12-13 (quoting *Fox v. Hayes*, 600 F.3d 819, 834 (7th Cir. 2010)). While Knotts understandably is upset about what happened to him, the actions of Officers Carreira and Ernst were not so extreme.

Case No. C 07-04987 JF
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC3)

1    insufficient to establish probable cause without further investigation.  *See United States v. Tate*,

2    694 F.2d 1217, 1221 (9th Cir. 1982) (odor of ether coming from residence was not sufficient

3    probable cause, as ether is used for many innocuous uses as well was the manufacture of PCP);

4    *United States v. Welker*, 689 F.2d 167, 169 (10th Cir. 1982) (no grounds to arrest Hispanic

5    person removing letter from a mailbox in a black neighborhood).  However, in this case, Officers

6    Ernst and Carreira had more than one ambiguous fact upon which to base their determination of

7    probable cause.  Even Knotts acknowledged that the manifold found in his vehicle bore a close

8    resemblance to a billy club.  Knotts Dep. 62:16-25.  In addition, the officers had been put on

9    alert that Dangerfield or his "muscle" might be carrying a pipe or wrench to carry out a threat of

10   serious bodily harm against Sisson.  *See People v. Grubb*, 63 Cal. 2d 614, 621 (Cal. 1965)

11   ("[T]he statute would encompass the possession of a table leg, in one sense an obviously useful

12   item, when it is detatched from the table and carried at night in a "tough" neighborhood to the

13   scene of a riot.  On the other hand the section would not penalize the Little Leaguer at bat in a

14   baseball game.").  These facts, along with Knotts's unusual driving pattern and explanation of

15   his activities, were sufficient to lead the officers to believe the manifold was an illegal weapon.

16       It is unreasonable to expect officers to pursue all possible avenues of investigation before

17   making an arrest.  Ordinarily, once the elements of a crime have been established, there is no

18   further duty to continue investigating.  *BeVier v. Hucal*, 806 F.2d 123, 127 (7th Cir. 1986).  The

19   Court concludes that under the circumstances Officers Carreira and Ernst reasonably could have

20   believed that they had probable cause to arrest Knotts.

21       **4.    Municipal Liability**

22       Knotts also asserts a claim against the City of Santa Clara pursuant to 42 U.S.C. § 1983,

23   alleging that the officers' violations of his constitutional rights were the result of a pattern and

24   practice of the SCPD resulting from inadequate training or supervision.  To establish this claim,

25   Knotts must show: "(1) he was deprived of a constitutional right; (2) the City had a training

26   policy that amounts to deliberate indifference to the constitutional rights of the persons with

27   whom its police officers are likely to come into contact; and (3) his constitutional injury would

28   have been avoided had the City properly trained those officers." *Blankenhorn v. City of Orange*,

1   485 F.3d 463, 484 (internal quotation marks and alterations omitted); *see also Connick v.*

2   *Thompson*, 131 S. Ct. 1350, 1359-60 (2011) (a municipality's policy of not training its

3   employees is only actionable where it "amount[s] to deliberate indifference to the rights of

4   persons with whom the [untrained employees] come into contact" (internal quotation marks

5   removed)).  It is not sufficient "to provide that an injury or accident could have been avoided if

6   an officer had [received] better or more training," a plaintiff must show "the need for more

7   training or different training is so obvious, and the inadequacy so likely to result in the violation

8   of constitutional rights, that the policymakers of the city can reasonably be said to have been

9   deliberately indifferent to the need." *Id.* at 390. Summary judgment is appropriate where a

10   plaintiff fails to introduce evidence from which a jury could infer such deliberate indifference.

11   *See Mateyko v. Felix*, 924 F.2d 824, 826 (9th Cir. 1991).

12          Defendants contend that because Knotts's rights were not violated, there can be no

13   municipal liability.  They also argue that Knotts has not provided any evidence tending to show

14   that the officers' training was inadequate.  Knotts did not respond to the issue of municipal

15   liability in his opposition brief, nor has he identified evidence showing that the City was

16   deliberately indifferent to his constitutional rights or that the subject incident would have been

17   avoided if the City had provided better training.

18                    **5.      State Law Immunities**

19          Under California law, a police officer's actions in enforcing the law will be immunized if

20   "objectively reasonable." *See Reynolds v. County of San Diego*, 858 F. Supp. 1064 (S.D. Cal.

21   1994).  Cal. Gov't Code § 847 provides immunity from civil liability for false arrest or false

22   imprisonment if the arresting officer had reasonable cause to believe that the arrest was lawful.

23   As discussed above, the Court concludes that the officers' actions in this case were reasonable

24   under the circumstances.

25                              **III. ORDER**

26          Good cause appearing, Defendants' motion for summary judgment is granted.  The

27   pretrial and trial dates are hereby vacated.  The Clerk shall enter the judgment and close the file.

28   IT IS SO ORDERED.

10

Case No. C 07-04987 JF
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC3)

DATED: July 7, 2011

_____
JEREMY FOGEL
United States District Judge

11